retains discretion to decide whether to undertake this determination based on affidavits, *in camera* review, or some other procedure that strikes the appropriate balance between disclosure and protecting exempted materials.

Similarly, in response to Rugiero's request, the DEA withheld 288 pages in their entirety and released 102 with redactions. The affidavit in support of the DEA's motion for summary judgment simply asserts that none of the withheld material is reasonably segregable. None of the attached supporting exhibits offers any additional explanation regarding segregability. Nor does the extensive Vaughn index suggest that the agency even considered the issue. Therefore, we also remand Count XI for the district court to determine whether any documents withheld in their entirety by the DEA contain segregable material that should be disclosed under the FOIA.

## VIII.  Conclusion

For the foregoing reasons, we affirm the judgment of the district court in substantial part, reverse in part, and remand for further proceedings (1) to apply the "confidentiality" standard under section 552(b)(7)(D) to documents the DEA withheld in Count XI; and (2) to determine the segregability of documents withheld in their entirety by the DEA and the EOUSA, excluding the 821 pages of grand jury materials withheld pursuant to Rule 6(e) by the latter. On remand, the district court has available all of the tools normally available in FOIA actions to ensure agency compliance with disclosure obligations under the Act. We recognize that our ruling today will not necessarily result in production of these documents in whole or in part to Rugiero. Rather, we seek to ensure agency compliance with the governing legal standards for disclosing information under the FOIA and think that the Act compels this disposition.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0218P (6th Cir.)
File Name:  01a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

PATRICK RUGIERO,
          *Plaintiff-Appellant,*

     v.                                No. 99-1608

UNITED STATES DEPARTMENT
OF JUSTICE; DEPARTMENT OF
TREASURY,
          *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 97-40520—Paul V. Gadola, District Judge.

Argued:  November 2, 2000

Decided and Filed:  July 12, 2001

Before:  KRUPANSKY, BATCHELDER, and GILMAN,
Circuit Judges.

———————————

## COUNSEL

**ARGUED:**  David I. Schoen, Montgomery, Alabama, for Appellant.  William L. Woodard, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellees. **ON BRIEF:**  David I. Schoen, Montgomery, Alabama, for

Appellant.    William L. Woodard, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellees.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge. Patrick Rugiero filed requests with eleven components of the United States Departments of Justice and Treasury under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or "Act"), for information regarding himself.    Unsatisfied with the responses he received, Rugiero filed a complaint seeking declaratory and injunctive relief against all eleven divisions. Prior to commencement of discovery, the defendants filed motions for summary judgment, which the district court granted as to most of the defendant components. *Rugiero v. United States Dep't of Justice*, 35 F. Supp. 2d 977 (E.D. Mich. 1998).   When those remaining processed Rugiero's FOIA request or released particular documents, the district court dismissed these defendants.    Rugiero moved for reconsideration, but the district court denied the motion as untimely.   For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.  Statement of Facts

### A.  Rugiero's Trial and Conviction

On June 19, 1992, a jury convicted Rugiero of distributing cocaine and conspiracy to distribute, or possess with intent to distribute, cocaine and heroin, but returned a verdict of not guilty to charges of distributing heroin, intimidating a witness, and using a firearm during a violent crime. *United States v. Rugiero*, 804 F. Supp. 925, 928 (E.D. Mich. 1992).  On the evening following submission of the case to the jury, local news broadcasts identified Rugiero's defense counsel, N.C. Deday LaRene, as the target of a federal criminal

relatively detailed justification and explain why materials withheld are not segregable.  *Id.* (quotations omitted).  A district court errs by approving the withholding of an entire document without entering a finding on segregability. *Church of Scientology of Cal. v. United States Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1980).

Rugiero urges that the district court erred in failing to require the EOUSA and the DEA to produce all reasonably segregable material in documents withheld in their entirety. Specifically, he objects to the agencies' conclusory assertions of nonsegregability and, because of the government's alleged bad faith, seeks *in camera* review of these materials to assure compliance with the Act.

With respect to the EOUSA's withholding in full of 821 pages of grand jury materials, the district court found that the Vaughn index identifies these documents as containing transcripts of witness testimony, exhibits, and other materials identifying witnesses.  *Rugiero*, 35 F. Supp. 2d at 984.  As defendants point out, this finding discharges the district court's obligations under the FOIA so far as these documents are concerned.  The EOUSA, however, withheld 888 pages in their entirety, and the district court did not consider the segregability of the remaining documents.  The Vaughn index indicates that the EOUSA's decision to withhold many documents in their entirety consists solely of a conclusory statement that they do not contain segregable material.  By comparison, the index also lists some documents as containing responsive material that is "so intertwined with other third party and protected material as to be inextricable and nonsegregable."  Nowhere does the EOUSA describe the process by which it determined that all reasonably segregable material had been released or state why some materials are not reasonably segregable.  *See Davin*, 60 F.3d at 1052. Therefore, we remand Count IV to the district court for further proceedings to determine whether documents withheld in their entirety by the EOUSA contain material that can be reasonably segregated and disclosed.  The district court

exception. On remand, the district court should take whatever measures it deems appropriate to ensure that the DEA has complied with *Landano* in responding to Rugiero's FOIA request, taking into account that a "bald assertion that express assurances were given amounts to little more than recitation of the statutory standard, which we have held is insufficient." *Billington v. United States Dep't of Justice*, 233 F.3d 581, 584 (D.C. Cir. 2000) (citing *Campbell*, 164 F.3d at 30). The DEA cannot rely on conclusory assertions of compliance with *Landano*. Rather, the agency must provide assurances that sources in fact received promises of confidentiality before withholding information under section 552(b)(7)(D).

The remaining defendants properly applied the governing legal standards and described the responsive documents and materials withheld in sufficient detail to warrant summary judgment. We have reviewed the affidavits and Vaughn indices submitted by each component and are satisfied that each has correctly identified and applied the legal standards governing exemptions from disclosure under the FOIA and described responsive documents with sufficient particularity to allow Rugiero to challenge the withholding of individual documents, as evidenced by the district court's *in camera* review of Document 2 among others.

## VII.  Segregability

Consistent with its aim of maximum disclosure, the FOIA requires disclosure of "any reasonably segregable" portion of a record that falls within one of the statute's exceptions. 5 U.S.C. § 552(b). In such cases, the redactions are to be indicated on the record produced to the requesting party. *Id.* The agency has the burden to show that portions withheld are not segregable from the disclosed material. *Davin*, 60 F.3d at 1052. Under this principle of segregability, an agency cannot justify withholding an entire document simply because it contains some material exempt from disclosure. *Krikorian v. Department of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (quotations omitted). Rather, an agency must supply a

investigation for his alleged ties to organized crime figures. Two days later, a juror passed a note to the court expressing concern about the deliberations. Shortly thereafter, the jury indicated that it had reached a verdict, and the juror who authored the first note sent a second note to the court asking that the first note be disregarded. After receiving the verdicts, the court polled each juror individually and assured itself that, although several jurors had seen or heard about the news report, outside prejudicial information did not influence the verdicts.

The district court denied Rugiero's motion for a new trial based on the prejudice resulting from outside influences on the jury. *Id.* at 931. We affirmed the conviction on appeal. *United States v. Rugiero*, 20 F.3d 1387 (6th Cir.) (2-1 decision), *cert. denied*, 513 U.S. 878 (1994). LaRene represented Rugiero in all phases of his criminal trial and appeal, and Rugiero claims that during the course of his criminal trial he never knew—and that the government withheld from him information—that the federal government was preparing to indict LaRene. Viewing his attorney's impending indictment as a conflict of interest that prejudiced his defense at trial and on appeal, Rugiero has filed an action under 28 U.S.C. § 2255 seeking to set aside his conviction. Frustrated by the government's purported obfuscation of his requests for discovery and alleged misconduct in the section 2255 proceeding, Rugiero turned to the FOIA as an alternative means of learning information to use in his efforts to set aside his conviction. The same district court judge has presided over all of these actions, the criminal trial, the section 2255 action, and this FOIA case.

### B.  Rugiero's FOIA Requests

The complaint in this case identifies the eleven components from which Rugiero requested records in separate counts. The following defendants figure prominently in the discussion in this appeal: the Executive Office of the United States Attorneys ("EOUSA") named in Count IV; the United States

Secret Service ("USSS"); the Internal Revenue Service ("IRS"); the Tax Division of the Department of Justice ("DOJ Tax"); and the Drug Enforcement Agency ("DEA") named in Count XI.

Rugiero requested, pursuant to the FOIA, "a copy of any and all records, documents and any type of information that your agency has or had in its possession that is in any way connected to, related to or even remote [sic] in reference to my name." Each defendant responded to the request by searching its records, which resulted in production of over one thousand pages of responsive documents in total, with the vast majority withheld in full or in part pursuant to claims of statutory exemption under the Act. Three defendants, the USSS, IRS, and DOJ Tax, located no responsive documents.

The EOUSA, United States Marshals Service, and the DEA each conducted additional searches either at the administrative appeals level or in response to this suit and identified new documents subject to disclosure in response to Rugiero's FOIA request. The IRS asked Rugiero to narrow the scope of his request, and he identified all "Criminal Investigation Division records that may have been compiled between the years 1984 and 1993 inclusive" as the object of his FOIA query.

During the district court proceedings, DOJ Tax maintained that it never received Rugiero's FOIA request. *Rugiero*, 35 F. Supp. 2d at 986. When Rugiero produced a copy of it, however, the district court ordered DOJ Tax to process the request immediately. *Id.* Once DOJ Tax complied, the district court granted the division's motion for summary judgment.

Also, Rugiero contested the EOUSA's withholding of several specific documents. Document 2 is a letter from the federal prosecutor in Rugiero's criminal case to LaRene regarding intimidating conduct and threats directed at jurors and other third parties associated with Rugiero's criminal

withholding some documents responsive to Rugiero's FOIA request. The DEA identified 399 pages of responsive material, redacted 102, and withheld 288 in their entirety. The agency relied on section 552(b)(2) to withhold violator identifiers; on the exception in section 552(b)(7)(C) to withhold identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure; and on section 552(b)(7)(F) to withhold information about DEA agents. With respect to these matters, the affidavit adequately describes the content of the material withheld and applies the governing legal standards for nondisclosure under these exceptions properly. The agency's Vaughn index adequately describes responsive documents and the content of material withheld. In applying the exception in section 552(b)(7)(D), relating to confidential sources, however, the DEA's affidavit indicates that the agency withheld information on two types of informants: (1) those assigned an internal "Cooperating Individual Code" after receiving express assurances of confidentiality; and (2) those who received implied assurances of confidentiality pursuant to agency policy, which treats the "circumstances of the interview itself [as] creat[ing] an atmosphere in which a promise of confidentiality is understood."

Pursuant to *Landano*, the agency properly withheld information on those who received express assurances of confidentiality. In contrast, the affidavit indicates that the DEA has adopted a blanket rule that any informant who has not received an express assurance of confidentiality will be treated as having received an implied promise of confidentiality. *Landano* does not countenance such a uniform policy, requiring instead that the agency assess confidentiality based on the particular circumstances applicable to each source. Accordingly, the DEA has applied an incorrect standard to confidential informants falling in the second category identified in its affidavit. The DEA's Vaughn index fails to distinguish between these types of confidential sources, necessitating review of all documents the DEA has withheld in full or in part based on this

(3d Cir. 1995) (quoting *Ferri v. Bell*, 645 F.2d 1213, 1224 (3d Cir. 1981)); *Rosenfeld v. United States Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995) (citations omitted).

(4) *Section 552(b)(7)(F)*.  This section exempts from disclosure material that "could reasonably be expected to endanger the life or physical safety of any individual."

### B. Defendants' Reliance on Exemptions

Rugiero claims that the district court erred by failing to analyze the claims of exemption with sufficient specificity and detail as required by the Act.  Defendants dismiss this argument as simply rehashing claims of bad faith.  The government's position overlooks this court's obligation to review the affidavits, declarations, and Vaughn indices of agencies to ensure compliance with the Act.  *Ingle*, 698 F.2d at 265.  In none of the orders granting defendants' motions for summary judgment did the district court scrutinize the claims for exemption in the affidavits produced by the agencies. Although the government remains entitled to a presumption of regularity absent a showing of bad faith, the role of the district court is to review the adequacy of the affidavits.  *Id.* "If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position." *Id.* (quoting *Cox*, 576 F.2d at 1312). This standard demands that the district court review the affidavits justifying the withholding of documents responsive to a FOIA request against the law governing application of the Act's exemptions.  The record gives no indication that the district court did this.  Accordingly, we are forced to conclude the district court erred in failing to review the adequacy of the grounds for nondisclosure stated in the affidavits as required by *Ingle*.

Upon review of the agencies' affidavits, we conclude that only one defendant applied incorrect legal standards in

trial.  Because the document had already been disclosed to Rugiero's defense counsel, the district court ordered the EOUSA to release the document in its entirety to Rugiero, *id.* at 984, though the court later modified this order to redact the names of jurors and third parties.  The district judge conducted an *in camera* review of Document 3, a letter from a federal prosecutor to an FBI agent regarding jury tampering in Rugiero's criminal case, Document 5, a document on which the United States Probation Department relied in preparing Rugiero's presentence report, and Documents 9 and 10, allegedly containing correspondence between a federal prosecutor and third parties regarding the investigation of LaRene.  *Id.* at 984-85.  Upon review, the court declined to order the EOUSA to produce any of these documents.  *Id.*

## II.  Standard of Review

An agency's denial of a FOIA request is reviewed by a district court de novo.  5 U.S.C. § 552(a)(4)(B).  Similarly, this court reviews the propriety of a district court's grant of summary judgment in a FOIA proceeding de novo.  *Abraham & Rose, P.L.C. v. United States*, 138 F.3d 1075, 1078 (6th Cir. 1998) (citing *Detroit Free Press, Inc. v. Department of Justice*, 73 F.3d 93, 95 (6th Cir. 1996)).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 252 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.  Applicable Provisions of the FOIA

The FOIA generally provides that every federal agency shall promptly make available upon request records reasonably described.  5 U.S.C. § 552(a)(3)(A).  Under the Act, an agency may not withhold or limit the availability of any record, unless one of the FOIA's specific exceptions applies.  *Id.* § 522(d).  These exceptions are to be narrowly construed, *Department of the Interior v. Klamath Water Users Protective Ass'n*, 121 S. Ct. 1060, 1065 (2001) (quoting *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989)), and the burden is on the agency to justify its action.  5 U.S.C. § 552(a)(4)(B).  Therefore, the structure of the Act reflects "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language."  *Department of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (quotation omitted).

To ensure the breadth of disclosure, the Act authorizes courts to examine documents *in camera* when reviewing the propriety of an agency's withholdings.    5 U.S.C. § 552(a)(4)(B).  *In camera* review is a discretionary measure taken after consideration of:  (1) judicial economy; (2) actual agency bad faith, either in the FOIA action or in the underlying activities that generated the records requested; (3) strong public interest; and (4) whether the parties request *in camera* review.  *Ingle v. Department of Justice*, 698 F.2d 259, 267 (6th Cir. 1983), *overruled on other grounds by United States Dep't of Justice v. Landano*, 508 U.S. 165 (1993).  This circuit, however, encourages use of *in camera* review sparingly, when no other procedure allows review of the agency's response to a FOIA request.  *Id.*

(1)  *Section 552(b)(7)(C)*.  Information compiled for law enforcement purposes the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy" does not come within the FOIA's disclosure mandate.  5 U.S.C. § 552(b)(7)(C).  This court construes this section as requiring a balancing test similar to that conducted under section 552(b)(6).  *Jones*, 41. F.3d at 246 (citing *Rose*, 425 U.S. at 372-73).

(2)  *Section 552(b)(7)(D)*.  Section 552(b)(7)(D) excepts records that "could reasonably be expected to disclose the identity of a confidential source."  Here, the question is not whether the document is of a type the agency normally treats as confidential, but whether the particular source spoke with an understanding of confidentiality.  *United States Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993).  Unless a promise of confidentiality is expressly given, the government is not entitled to a presumption of confidentiality outside of a narrowly defined set of circumstances supporting such an inference, such as the use of a paid informant.  *Id.* at 173-79.  Although not defined in the Act, the Supreme Court has defined "confidential" in this section as referring to a degree of confidentiality less than total secrecy.  *Id.* at 174.  If a confidential source is later revealed, we nonetheless restrict public access to documents under this section so long as the informant and the agency intended the identity of the source to remain undisclosed at the time the agency compiled the information.  *Jones*, 41 F.3d at 249.

(3)  *Section 552(b)(7)(E)*.  This provision allows the withholding of materials that would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations if such disclosure could reasonably be expected to risk circumvention of the law." This provision, however, only protects techniques and procedures not already well-known to the public.  *E.g.*, *Davin v. United States Dep't of Justice*, 60 F.3d 1043, 1064

data; and (2) if so, whether disclosure constitutes a "clearly unwarranted" invasion of privacy. *Heights Cmty. Cong. v. Veterans Admin.*, 732 F.2d 526, 528 (6th Cir. 1984) (citing *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 601-02 (1982)). Under the threshold requirement, the exception applies to any government "records on an individual which can be identified as applying to that individual." *Id.* (quoting *Washington Post*, 456 U.S. at 601-02). Determining whether disclosure works a clearly unwarranted invasion of privacy requires a balancing test under which courts identify the privacy interest at stake and weigh it against the public interest in disclosure. *Id.* at 529. "The central inquiry is whether public access to the information is tantamount to an invasion of privacy; if so we ask whether such an invasion is justified by any countervailing public benefit from disclosure." *Id.* (quoting *Madeira Nursing Ctr., Inc. v. NLRB*, 615 F.2d 728, 730 (6th Cir. 1980)) (alterations omitted). A clear privacy interest exists with respect to such information as names, addresses, and other identifying information even where such information is already publicly available. *Abraham & Rose*, 138 F.3d at 1083 (citing *United States Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 500 (1994)).

Fifth, section 552(b)(7) exempts records or information compiled for law enforcement purposes, but only if certain conditions are met. This court has adopted a per se rule under which any documents compiled by a law enforcement agency fall within the first part of the section 552(b)(7) exception. *Jones*, 41 F.3d at 245. This rule applies not only to criminal enforcement actions, but to records compiled for civil enforcement purposes as well. *Abraham & Rose*, 138 F.3d at 1083 (citing *White v. IRS*, 707 F.2d 897, 901 (6th Cir. 1983)). Accordingly, for a law enforcement agency to withhold information under this section, one of the specific provisions of section 552(b)(7) alone need apply. Four of these are relevant:

Procedurally, district courts typically dispose of FOIA cases on summary judgment before a plaintiff can conduct discovery. *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994). This posture creates a situation in which a plaintiff must argue that the agency's withholdings exceed the scope of the statute, although only the agency is in a position to know whether it has complied with the FOIA unless the court reviews a potentially massive number of documents *in camera*. *Id.* One means developed to address this situation is the use of a "Vaughn index," a routine device through which the agency describes the documents responsive to a FOIA request and indicates the reasons for redactions or withholdings in sufficient detail to allow a court to make an independent assessment of the claims for exemptions from disclosure under the Act. *Id.* at 241-42; *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Ordinarily, the agency may justify its claims of exemption through detailed affidavits, which are entitled to a presumption of good faith. *Jones*, 41 F.3d at 242 (citing *United States Dep't of State v. Ray*, 502 U.S. 164, 179 (1991)). Evidence of bad faith on the part of the agency can overcome this presumption, even when the bad faith concerns the underlying activities that generated the FOIA request rather than the agency's conduct in the FOIA action itself. *Id.* at 242-43. Unless evidence contradicts the government's affidavits or establishes bad faith, the court's primary role is to review the adequacy of the affidavits and other evidence. *Ingle*, 698 F.2d at 265 (quoting *Cox v. United States Dep't of Justice*, 576 F.2d 1302, 1312 (8th Cir. 1978)); *Silets v. United States Dep't of Justice*, 945 F.2d 227, 231 (7th Cir. 1991) (citing *Kimberlin v. Department of Treasury*, 774 F.2d 204 (7th Cir. 1985)). "If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position." *Ingle*, 698 F.2d at 265 (quoting *Cox*, 576 F.2d at 1312).

## IV.  Bad Faith

Rugiero's most insistent argument is that evidence of the government's bad faith in this FOIA action, the parallel section 2255 proceeding, and the underlying criminal conviction militate in favor of *in camera* review of at least a random sample of the documents responsive to his FOIA requests.   A showing of bad faith would rebut the presumption of regularity the government enjoys in responding to FOIA requests, *Jones*, 41 F.3d at 242, and would weigh heavily in the decision to conduct an *in camera* review of responsive documents withheld or redacted. *Ingle*, 698 F.2d at 267.

Rugiero offers the saga of Document 2 as the best example of bad faith in these FOIA proceedings.  The EOUSA's Vaughn index describes the document as "[c]orrespondence from AUSA to attorneys re:  jury tampering" and indicates that its contents involve "discussions with jurors, third party individuals, and threats, intimidating conduct directed at and reported by several jurors in course of Rugiero prosecution." Pursuant to 5 U.S.C. § 552(b)(6) and (7)(C), the EOUSA initially withheld the entire document. *Rugiero*, 35 F. Supp. 2d at 984.  Noting that a copy of the letter had been sent to LaRene, the district court ordered the document released in its entirety to Rugiero.  *Id.*  Later, the court reconsidered and allowed the EOUSA to redact the names of individuals in the letter.  Disputing the characterization of the contents of the letter, Rugiero invites us to review its contents.  In relevant part, the correspondence redacted pursuant to 5 U.S.C. § 552(b)(7)(C) describes a discussion a prosecutor had with jurors following the criminal trial:

> Having talked to juror [7C], I made a general inquiry of the several jurors who were still present, asking them if they had encountered any unusual events during the course of the trial.  Juror [7C] said that, on one occasion, [7C] noted a [7C] colored vehicle driving slowly down [7C] block as if the driver were searching for an address,

30 F.3d at 235.  Documents created for reasons independent of a grand jury investigation do not.  *Id.* (citing *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1412 (9th Cir. 1993)).

Third, section 552(b)(5) exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  This provision protects documents that a private party could not discover in litigation with the agency. *Schell v. United States Dep't of Health and Human Servs.*, 843 F.2d 933, 939 (6th Cir. 1988) (citations omitted).  Courts have construed this exception to preserve the recognized evidentiary privileges, such as the attorney-client privilege, the attorney work-product privilege, and the deliberative process privilege.  *Klamath Water Users Protective Ass'n*, 121 S. Ct. at 1065-66; *Schell*, 843 F.2d at 939 (citing *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 5 (6th Cir. 1980)).  To come within this exception on the basis of the deliberative process privilege, a document must be both "predecisional," meaning it is "received by the decisionmaker on the subject of the decision prior to the time the decision is made," and "deliberative," the result of a consultative process.  *Schell*, 843 F.2d at 940 (citing *Parke, Davis & Co.*, 623 F.2d at 6). Although this privilege covers recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the opinions of the writer rather than the policy of an agency, the key issue in applying this exception is whether disclosure of the materials would "expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* (quoting *Dudman Communications Corp. v. Department of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

Fourth, section 552(b)(6) exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  We have read this section as establishing a two-prong inquiry: (1) whether the file includes personnel, medical, or "similar"

relates predominantly to an agency's rules and practices for personnel. *Id.* The agency must further show that the public has no legitimate interest in the information requested. *Id.* This exemption applies to routine matters of merely internal significance. *Jones*, 41 F.3d at 244 (quoting *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 485 (D.C. Cir. 1980)). This court has upheld the use of this exemption to withhold file numbers and symbols used to identify informants. *Id.* at 244-45 (citing *Kiraly v. FBI*, 728 F.2d 273, 276 n.6 (6th Cir. 1984)). Information that merely has the potential for bringing to light the practices by which an agency collects and processes information does not come within the ambit of the exception. *Abraham & Rose*, 138 F.3d at 1081.

Second, section 552(b)(3) covers matters "specifically exempted from disclosure by statute" when the statute leaves no discretion about the decision to withhold information from the public or establishes specific criteria for withholding particular types of matters. Accordingly, the scope of the inquiry under this exemption is limited: if a statute exempts materials from disclosure and the requested materials fall within that statute's scope, that is the end of the matter. Though not previously addressed in this circuit, courts have unanimously held that Rule 6(e) of the Federal Rules of Criminal Procedure constitutes a statute under section 552(b)(3) of the FOIA so that an agency may withhold grand jury materials. *E.g.*, *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 n.4 (7th Cir. 1998); *Church of Scientology Int'l v. United States Dep't of Justice*, 30 F.3d 224, 235 (1st Cir. 1994); *McDonnell v. United States*, 4 F.3d 1227, 1246-47 (3d Cir. 1993); *Fund for Constitutional Gov't v. National Archives & Records Serv.*, 656 F.2d 856, 868 (D.C. Cir. 1981). Rule 6(e)(3) outlines the exceptions to the Rule's general prohibition against disclosure of grand jury materials. Nonetheless, documents identified as grand jury exhibits or containing testimony or other material directly associated with grand jury proceedings fall within the exemption under section 552(b)(3) without regard to whether one of the Rule 6(e)(3) exceptions allows disclosure. *Church of Scientology*,

but that event had no impact upon [7C's] role as a juror. Additionally, juror [7C] advised that in travelling home after court one day, a car which [7C] believed to be occupied by [7C] [7C] on the freeway. While that event bothered [7C], it did not preclude [7C] from deciding the case solely upon the evidence and, in fact, finding [one of Rugiero's co-defendants] not guilty. No other jurors reported any unusual events occurring to them during the course of the trial. I did hear later, however, that some of the jurors were disturbed by the fact that an investigator, apparently retained by the defense, had contacted or tried to make contact with them.

In response to Rugiero's motion for reconsideration of the order allowing the EOUSA to redact portions of this letter, the district court concluded that "the document can fairly be read to contain exactly the information DOJ and EOUSA indicated that the document contained." We agree. Though the document nowhere uses the words "threat" or "intimidation," from the perspective of the jurors involved, this characterization is fair. More importantly, the description of the document in the Vaughn index appears accurate. Although Rugiero expresses outrage that the EOUSA has redacted portions of a document already released to his attorney, we have clearly held that no diminution of privacy interests occurs despite the fact that the identifying information is already publicly available. *Abraham & Rose*, 138 F.3d at 1083. Therefore, these redactions were proper, and upon inspection Rugiero's prime example of bad faith on the part of the government in this proceeding amounts to nothing more than proper application of the law.

With regard to bad faith elsewhere in this action, the district court specifically found that Rugiero had failed to offer any such evidence with respect to the defendants that identified responsive documents, except the EOUSA. *Rugiero*, 35 F. Supp. 2d at 983, 985. These findings provided the basis for the district judge's refusal to review the documents *in camera*. *Id.* Although he failed to make a similar finding

explicitly with regard to the other defendants, their lack of bad faith is readily discernible. Because the USSS, IRS, and DOJ Tax found no responsive documents and DOJ Tax required prodding from the district court to conduct its search, Rugiero constructs an argument of bad faith dependent on the adequacy of these defendants' searches. Yet even an inadequate search does not necessarily imply bad faith, and the record lacks any evidence supporting Rugiero's argument that the USSS, IRS, or DOJ Tax acted in bad faith in responding to the FOIA requests. With respect to the EOUSA, the district judge reviewed several documents, in addition to Document 2, *in camera*. That review resulted in no action other than the modified order producing Document 2 with redactions. Rugiero contends that, since the EOUSA initially sought to withhold Document 2 in its entirety, the district court's release of the document should trigger heightened scrutiny of others. This argument overlooks the *in camera* review of the other documents from which the district court concluded that the EOUSA properly withheld materials Rugiero sought to have released. Moreover, one instance of failing to release a record—without more—does not constitute bad faith, especially when as here the agency has processed a voluminous body of responsive documents.

Rugiero also contends that bad faith in the section 2255 proceeding and his criminal trial obligated the district court to conduct an *in camera* review of the responsive documents. With respect to the section 2255 action, the parties argue whether the government has played a "shell game" by telling Rugiero there that he can obtain documents for the collateral challenge to his conviction in this FOIA action while saying here that he can receive material through discovery in the section 2255 proceeding. Regarding the criminal trial, the parties debate whether the failure to disclose LaRene's then-impending indictment constituted bad faith. Relying on the line of cases originating in *Holloway v. Arkansas*, 435 U.S. 475 (1978) (holding that an attorney's conflict of interest gives rise to a claim of ineffective assistance of counsel under the Sixth Amendment and establishes prejudice per se), *see*

FOIA request, and no records relating to a criminal investigation of Rugiero were found. Because the declaration submitted by DOJ Tax fails to describe the methods of its search and states simply that the agency searched its "indices," this response to Rugiero's FOIA requests verges on the impermissibly conclusory. *Bennett*, 55 F. Supp. 2d at 40 ("An affidavit must give reasonable detail of the scope of the search in order to satisfy the agency's burden of proof; simply stating that 'any and all records' were searched is insufficient."). The declaration does state that DOJ Tax maintains its files by the name of the subject of an investigation, so whatever files the agency searched in response to Rugiero's request would have turned up any documents if he were the target of an investigation. Of course, Rugiero requested all documents relating to him, not just those pertaining to an investigation of himself, and DOJ Tax has not given any indication that it conducted this broader search. Our inquiry focuses on the reasonableness of the search, not the potential existence of additional responsive documents. *Steinberg*, 23 F.3d at 551 (quoting *Weisberg*, 745 F.2d at 1485). We think that DOJ Tax conducted a reasonable search in response to Rugiero's FOIA request and that the declaration demonstrates compliance with the obligations the Act imposes on the agency. Therefore, since the record lacks any countervailing evidence, the district court properly granted summary judgment.

## VI.  Exemptions from Disclosure

### A.  Relevant Exemptions under the FOIA

Defendants have invoked five of the FOIA's exceptions in withholding in full or in part materials released in response to Rugiero's requests. First, section 552(b)(2) exempts records "related solely to the internal personnel rules and practices of an agency." This court employs a two-prong test developed in other circuits to determine the applicability of this exception. *Abraham & Rose*, 138 F.3d at 1080. The agency must show that the requested information it seeks to withhold

identify files with Rugiero's social security number. Rugiero again protests that the IRS must have records on him since the agency introduced his tax returns at his criminal trial. The Criminal Investigation Division, however, investigates violations of the criminal provisions of Title 26. Rugiero did not face such charges at his criminal trial. Moreover, the district court harmonized the introduction of tax records and the lack of responsive documents at the oral arguments on defendants' motions for summary judgment:

> [I]n a drug case when the tax returns are introduced, it's not necessarily because there's any charge, of course, of tax evasion, but usually it's introduced to produce some evidence from which the jury could infer that the individual has some . . . illicit source of income that he's not disclosed on the tax returns because his lifestyle far exceeds what's shown on the tax return. That arises fairly often in drug cases.

Additionally, Rugiero questions the good faith of the IRS in responding to his request since the agency required him to narrow his search before processing it. The FOIA requires that a request "reasonably describe" the documents sought. 5 U.S.C. § 552(a)(3)(A). Accordingly, a request to narrow the scope of a search is entirely permissible under the Act. When the IRS asked Rugiero to narrow his request, the agency provided an overview of the types of records its divisions could be expected to have. Again, the focus is on the adequacy of the search, and there is no indication that the IRS failed to conduct an adequate search for the records requested. Therefore, summary judgment for the IRS was proper. Rugiero remains free, of course, to submit FOIA requests to other divisions within the IRS.

Finally, Rugiero challenges the adequacy of the search conducted by DOJ Tax, which initially maintained it had never received a FOIA request from Rugiero and only conducted its search when ordered to do so by the district court. The only file identified in the search related to this

*also Riggs v. United States*, 209 F.3d 828, 831-32 & n.1 (6th Cir. 2000), Rugiero maintains that the collateral nature of bad faith in FOIA proceedings under *Jones* obligated the district judge to conduct an *in camera* review of redacted and withheld responsive documents.

We express no opinion on the merits of Rugiero's argument that he suffered a deprivation of his Sixth Amendment rights. That question is the subject of the section 2255 action and is not properly before us. We do believe, however, that Rugiero misunderstands our discussion of bad faith in *Jones*. There, the FBI had targeted the leader of a black nationalist group as a part of its now infamous COINTELPRO program and played a role in the prosecution of Jones for the murder of two police officers. Jones used documents obtained from the FBI through FOIA requests to secure his release through the issuance of a writ of habeas corpus and subsequently filed suit under the FOIA to compel release of withheld material. Although an agency's processing of a FOIA request ordinarily enjoys a presumption of good faith, we noted that "[e]ven where there is no evidence that the agency acted in bad faith with regard to the FOIA action itself there may be evidence of bad faith or illegality with regard to the underlying activities which generated the documents at issue." *Jones*, 41 F.3d at 242. Later, we quoted *Ingle v. Department of Justice* for examples of the type of bad faith that might lead a district court to conduct an *in camera* review: "where it becomes apparent that the subject matter of a request involves activities which, if disclosed, would *publicly embarrass* the agency or that a so-called '*cover up*' is presented, government affidavits lose credibility." *Jones*, 41 F.3d at 243 (quoting *Ingle*, 698 F.2d at 267) (emphasis added).

Employing this standard, we concluded that *Jones* presented a clear case of bad faith warranting *in camera* review because the nature of the FBI's COINTELPRO investigation went beyond the ordinary detection and prevention of criminal activity to well-documented infringements of civil liberties whose disclosure threatened

public embarrassment of the FBI. *Id.* In reaching this conclusion, we recognized that *Jones* presented an unusual case and defined the collateral nature of bad faith in FOIA actions according to a very high standard that would infrequently be met. *Id.* ("[T]he courts of this circuit should not process this case in the same manner as they would a request for documents regarding a routine FBI investigation.").

We think that the public controversy surrounding COINTELPRO and the FBI's direct role in securing a tainted conviction in *Jones* suffices to distinguish Rugiero's case, which falls much closer to a "routine investigation" and prosecution entitled to a presumption of good faith. While we do not condone the withholding of a possible conflict of interest from the district court, Rugiero has simply not pointed to strong evidence of bad faith that calls into question the district court's decision not to conduct an *in camera* review of responsive documents. To the extent that Rugiero has sought to use the FOIA to aid his section 2255 action, we repeat that "a FOIA request is not a substitute for the normal process of discovery in civil and criminal cases." *Jones*, 41 F.3d at 250 (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989), and *Irons v. Bell*, 596 F.2d 468, 475 & n.15 (1st Cir. 1979)).

## V.  Adequacy of Searches for Responsive Documents

Rugiero next claims that the district court erred in not evaluating the adequacy of the searches conducted in response to his FOIA requests. His brief focuses on the searches conducted by the IRS, USSS, and DOJ Tax, all of which found no documents responsive to his request.

In response to a FOIA request, an agency must make a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information. *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998). The FOIA requires a reasonable

search tailored to the nature of the request. *Id.* at 28. At all times the burden is on the agency to establish the adequacy of its search. *Patterson v. IRS*, 56 F.3d 832, 840 (7th Cir. 1995); *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). In discharging this burden, the agency may rely on affidavits or declarations that provide reasonable detail of the scope of the search. *Bennett v. DEA*, 55 F. Supp. 2d 36, 39 (D.D.C. 1999) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)). "In the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Id.* The question focuses on the agency's search, not on whether additional documents exist that might satisfy the request. *Steinberg*, 23 F.3d at 551 (quoting *Weisberg*, 745 F.2d at 1485).

After outlining the basic structure of the agency's Master Central Index computer system, the declaration from the USSS indicates that three individuals searched the agency's computer system on three separate occasions from three different offices. Each of these searches looked for documents by name, date of birth, and social security number. This search appears to be the model of responsiveness under the FOIA. Rugiero contends, however, that the USSS cannot possibly have no documents pertaining to him since an agent testified at his trial. The declaration of the agency responds that the agent who testified maintained no paper files relative to him and had minimal contacts with Rugiero since another agency conducted the investigation. Because our legal standard focuses on the adequacy of the search, not the chance that additional responsive documents exist, *id.*, summary judgment for the USSS was appropriate.

With regard to the IRS, the declaration outlined operation of its Integrated Data Retrieval System and stated that Rugiero's request for documents pertaining to himself within the Criminal Investigation Division compiled between 1984 and 1993 inclusive was processed twice, each time seeking to