EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

BURLINGTON NORTHERN & SANTA
FE RAILWAY CO., Defendant.

Case No. 07–2450.

United States District Court,
W.D. Tennessee,
Western Division.

June 4, 2009.

Deidre Smith, Faye A. Williams, Steven W. Dills, Equal Employment Opportunity Commission, Memphis, TN, for Plaintiff.

Bryan P. Neal, Stephen F. Fink, Thompson & Knight, Dallas, TX, Lawrence M. Stroik, Burlington Northern Railroad Companym, Fort Worth, TX, Ralph T. Gibson, Bateman Gibson & Childers, Memphis, TN, for Defendant.

## ORDER DENYING DEFENDANT'S APPEAL FROM MAGISTRATE JUDGE'S ORDER GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

SAMUEL H. MAYS, JR., District Judge.

Plaintiff Equal Employment Opportunity Commission ("EEOC") brings this ac-

tion against Defendant Burlington Northern & Santa Fe Railway Co. ("BNSF") for employment discrimination in violation of Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111, *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981. On April 18, 2008, BNSF served a Rule 30(b)(6) deposition notice on EEOC. On September 12, 2008, EEOC filed a motion for a protective order with respect to the deposition. BNSF responded on September 29, 2008, EEOC replied on November 26, 2008, and, with leave of the Court, BNSF filed a surreply on December 9, 2008. On September 15, 2008, the Court referred EEOC's motion to United States Magistrate Judge Tu M. Pham. On May 19, 2009, 615 F.Supp.2d 717 (W.D.Tenn.2009), the Magistrate Judge entered an order granting EEOC's motion for a protective order. On May 29, 2009, BNSF filed objections to and an appeal from the Magistrate Judge's order, and EEOC responded on June 4, 2009. For the following reasons, BNSF's objections to the Magistrate Judge's order are OVERRULED.

## I. Background

Emerson Payne ("Payne") was hired as a train conductor at Defendant's Memphis, Tennessee train yard on March 19, 2001. (Compl. ¶ 8.) Around March 23, 2003, Payne was involved in a motorcycle accident that resulted in the amputation of his right leg below the knee. (*Id.* ¶ 9.) On January 19, 2004, Payne's doctor released him to return to work with no restrictions. (*Id.* ¶ 10.) Payne spoke to several management officials at BNSF, but he was never allowed to return to work as a train conductor. (*Id.* ¶ 11.)

Plaintiff sues Defendant on Payne's behalf, alleging that Defendant discharged Payne because of his disability, depriving him of equal employment opportunities in violation of the ADA.[1] (*Id.* ¶ 12.) In accordance with Rule 30(b)(6), the April 18, 2008 deposition notice that BNSF served on EEOC lists specific deposition topics BNSF intends to inquire about during the deposition. EEOC seeks a protective order against deposition topics 6, 7, and 10 through 15, arguing that those matters are protected by the deliberative process privilege. BNSF argues that EEOC cannot invoke the deliberative process privilege to protect case-specific information in a case in which it is the party plaintiff.

## II. Jurisdiction

This Court has jurisdiction over an ADA claim under 28 U.S.C. § 1331.

## III. Standard of Review

When a party objects to a magistrate judge's ruling on a non-dispositive matter, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a). "The 'clearly erroneous' standard applies only to factual findings made by the Magistrate Judge, while [his] legal conclusions will be reviewed under the more lenient 'contrary to law' standard." *Gandee v. Glaser,* 785 F.Supp. 684, 686 (S.D.Ohio 1992), *aff'd,* 19 F.3d 1432 (6th Cir.1994). A district court's review "under the 'contrary to law' standard is 'plenary,' and it 'may overturn any conclusions of law which contradict or ignore applicable precepts of law' ... Thus, [a district court] must exercise its independent judgment with respect to a Magistrate Judge's legal

---

**1.** The EEOC, as a federal agency charged with the administration, interpretation, and enforcement of Title I of the ADA, is author-

ized to sue on Payne's behalf under Section 107(a) of the ADA. 42 U.S.C. § 12117(a).

conclusions." *Id.* (citations omitted). BNSF objects to the Magistrate Judge's legal conclusion that the EEOC has not waived the deliberative process privilege by filing this lawsuit.

## IV. Analysis

■ The deliberative process privilege protects from discovery "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *see also Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001). This privilege protects internal communications of a governmental agency when they are deliberative in nature, but not when they are purely factual. *Sears,* 421 U.S. at 149, 95 S.Ct. 1504. The policy rationale behind the privilege is to promote effective governmental decision making by maintaining a free and open exchange of ideas among government officials. *Missouri ex rel. Shorr v. United States Corps of Eng'rs,* 147 F.3d 708, 710 (8th Cir.1998). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' ... by protecting open and frank discussion among those who make them within the government." *Klamath,* 532 U.S. at 9, 121 S.Ct. 1060. Therefore, "the key issue in applying this exception is whether disclosure of the materials would 'expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Rugiero v. U.S. Dep't of Justice,* 257 F.3d 534, 550 (6th Cir.2001) (quoting *Schell v. U.S. Dep't of Health & Human Servs.,* 843 F.2d 933, 940 (6th Cir.1988)); *see also EEOC v. Texas Hydraulics, Inc.,* 246 F.R.D. 548, 551 (E.D.Tenn.2007).

■ "Factual materials are generally not privileged unless they are inextricably intertwined with policy-making processes.... Non-factual materials that express opinions or recommendations, on the other hand, are clearly protected." *Trentadue v. Integrity Comm.,* 501 F.3d 1215, 1227 (10th Cir.2007) (citing *Nat'l Wildlife Fed'n v. U.S. Forest Serv.,* 861 F.2d 1114, 1119 (9th Cir.1988); *Sears,* 421 U.S. at 150, 95 S.Ct. 1504). The privilege "is to be construed as narrowly as consistent with efficient Government operations." *EEOC v. Albertson's LLC,* No. 06–cv–01273–CMA–BNB, 2008 WL 4877046, at *1 (D.Colo. Nov. 12, 2008) (citing *Trentadue,* 501 F.3d at 1226–28). As described by the Sixth Circuit:

> To come within [the] deliberative process privilege, a document must be both "predecisional," meaning it is "received by the decisionmaker on the subject of the decision prior to the time the decision is made," and "deliberative," the result of a consultative process. Although this privilege covers recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the opinions of the writer rather than the policy of the agency, the key issue in applying this exception is whether disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency.

*Rugiero,* 257 F.3d at 550 (citations omitted).

■ The privilege is not absolute. *Redland Soccer Club, Inc. v. Dep't of Army,* 55 F.3d 827, 854 (3d Cir.1995).

Once the government shows that the deliberative process privilege applies, the party seeking discovery must show that its need for the information outweighs the government's interest. In balancing these competing interests, the court should consider several factors, including (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Id.; see also Albertson's*, 2008 WL 4877046, at *5; *Texas Hydraulics*, 246 F.R.D. at 552.

Both EEOC and BNSF cite case law to support opposing positions about whether the EEOC can invoke the deliberative process privilege as a party plaintiff. In his order, the Magistrate Judge "agree[d] with the courts that have declined to find a waiver of privilege based solely on the EEOC's status as a plaintiff." (Order, D.E. 97 at 5–6.) BNSF argues that the Magistrate Judge "overstates BNSF's argument" because BNSF does not seek a bright-line rule that EEOC can never invoke the privilege as a plaintiff, but that EEOC cannot invoke the privilege "to keep secret *case specific information*" when it is a party plaintiff in the litigation. (Def.'s Appeal at 4.) BNSF argues that the "overwhelming majority of courts to have addressed" the issue have held that a government plaintiff may not "withhold case-specific, relevant information from the defendant by invoking the deliberative-process privilege."[2] (*Id.* at 1, 6.) This Court declines to adopt such a broad, bright-line rule.

██ BNSF states that courts have used two different approaches in holding

that an agency plaintiff cannot invoke the deliberative process privilege: some use a balancing test, while others have applied a bright-line rule. Some courts use the five-part balancing test from *Redland Soccer Club*, described *supra*. As BNSF notes, however, the courts employing this method consider the third factor of the analysis, the government's role in the litigation, "to be determinative when the government is the plaintiff. The other factors are thus immaterial." (Def.'s Appeal at 6.) Thus, these courts have also adopted a bright-line rule. Regardless of whether a court recites the factors of a balancing test in its analysis, where the presence of one factor is considered dispositive on the issue, and the other factors are not weighed at all, that court has effectively adopted a bright-line rule.

██ This Court is hesitant to adopt such a rule. As the Sixth Circuit has advised, the key issue in determining whether the deliberative process privilege should apply is "whether disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency." *Rugiero*, 257 F.3d at 550. This principle should be the guidepost in determining when to apply the privilege, regardless of the posture of the agency in the litigation. Rather than being a dispositive factor, the EEOC's role as a plaintiff is one of several factors a court should consider when balancing the parties' interests. *Cf. id.* at 553–54.

Adoption of a bright-line rule, even if limited to case-specific materials, could lead to undesirable results. That a document relates specifically to the case at bar does not necessarily mean that it is ripe for discovery. With the EEOC, for exam-

---

**2.** Without commenting on BNSF's characterization of the state of the law, the Court notes that BNSF cites no analogous precedent that is binding on the Court.

ple, some documents, although related to a particular complainant's case, could nevertheless expose the agency's decisionmaking process and chill the free and open exchange of ideas if left unprotected by the privilege. A rule that does not allow such consideration would be too inflexible.[3]

## V. Conclusion

For the foregoing reasons, BNSF's objections to the Magistrate Judge's order are OVERRULED. BNSF's appeal is DENIED.

---

**3.** As the Magistrate Judge noted, concluding that the EEOC does not lose its deliberative process privilege simply because it is the Plaintiff in this case is not fatal to BNSF's ability to conduct a Rule 30(b)(6) deposition. No determination can be made about the applicability of the privilege until the privilege is asserted in response to specific questions at the deposition.