RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0005p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

CareToLive, A Not for Profit Corporation,
              *Plaintiff-Appellant,*

              *v.*

The Food and Drug Administration,
              *Defendant-Appellee.*

No. 09-4084

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 08-00005—Gregory L. Frost, District Judge.

Argued:  December 8, 2010

Decided and Filed:  January 6, 2011

Before:  MARTIN, NORRIS, and COOK, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Kerry M. Donahue, BELLINGER & DONAHUE, Dublin, Ohio, for Appellant.  John J. Stark, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.  **ON BRIEF:**  Kerry M. Donahue, BELLINGER & DONAHUE, Dublin, Ohio, for Appellant.  John J. Stark, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

     BOYCE F. MARTIN, JR., Circuit Judge.  CareToLive filed a request with the Food and Drug Administration, which we will refer to generally as the FDA, under the Freedom of Information Act seeking copies of letters sent between its medical experts regarding Provenge, an immunotherapy treatment for late stage prostate cancer.  The FDA was slow to respond to this request, and CareToLive filed a lawsuit demanding the

immediate production of responsive documents. The district court stayed proceedings while the FDA responded to the request and delivered responsive documents. The FDA then moved for summary judgment based on having fulfilled CareToLive's request, which the district court granted. CareToLive now appeals the grant of summary judgment in favor of the FDA and asserts that the district court erred by denying it discovery. However, CareToLive has not identified any material question of fact as to the adequacy of the FDA's search. Additionally, the district court did not abuse its discretion by denying CareToLive leave to conduct discovery. Therefore, we **AFFIRM** the decision of the district court.

## I.

CareToLive is an association of cancer patients, patient families, doctors, investors, and advocates focused on helping men suffering from late stage prostate cancer. This lawsuit arose as a result of the FDA's decision denying a Biologics License Application for Provenge. Immunotherapy treatments, like Provenge, train the body's immune system to recognize cancer cells and attack them. Although the FDA advisory panel had initially recommended approving Provenge, the agency did not follow that recommendation. After the FDA's initial denial, CareToLive suspected foul play and filed a request under the Freedom of Information Act with the FDA on August 15, 2007. The request sought:

> A copy of all letters written to the FDA (or prepared by the FDA) and purported to be from Dr. Scher, Dr. Hussain and Doctor Fleming in between March 29th 2007 and April 30th of 2007, regarding the [Biologics License Application] submitted for Provenge also known as Sipuleucel-T including the envelope or other means of communication whereby the FDA received such letters and a copy of any record of those letters then being disclosed to any media or other persons or specifically a publication called "The Cancer Letter," including the means of communication to the Cancer Letter of the Scher, Hussain and Fleming letters from the FDA or its employees to outside persons, publications or companies.

Although he was not named in the request, CareToLive suggests that Dr. Richard Pazdur was the FDA's "cancer czar" and at the center of the alleged improprieties. The doctors specifically identified in CareToLive's request appear to be Dr. Pazdur's advisors.

The FDA's Division of Freedom of Information received the request on September 11, and advised CareToLive by letter the same day that the request had been received.[1] CareToLive's request was the 8,316th request under the Freedom of Information Act that the FDA had received that year. The FDA's Division of Freedom of Information initially forwarded the request to the Center for Biologics Evaluation and Research because the request sought records relating to an unapproved biological product regulated by that Center. The request was also sent to the Office of the Commissioner, Office of the Executive Secretariat because it sought records relating to agency correspondence.

On November 6, the Center for Biologics responded with records. The Office of the Commissioner, Office of the Executive Secretariat responded on January 24, 2008 that it had not found any responsive records.

While these searches were pending, the Division of Freedom of Information also sent CareToLive's request to the Division of Information Disclosure Policy in the FDA's Center for Drug Evaluation and Research because the Center for Biologics indicated that additional records might be found there. The Division of Information Disclosure received the request on October 15, 2007 and assigned it to its "Complex Track." Requests that can be answered quickly with readily available documents and do not require any searching or redaction are considered simple, and placed on a faster track known as the "Simple Track." In contrast, if searching or redaction will be required, the request is placed on the "Complex Track."[2] The Division of Information Disclosure

---

[1] This delay appears to have occurred because CareToLive sent the request to the FDA's Cincinnati District Office and not directly to its Division of Freedom of Information as required by 21 C.F.R. § 20.40(a) (2010).

[2] The division between the "Simple" and "Complex" tracks appears to be based primarily on whether another party has previously requested the information and not on the type of request made. If another party has previously made the same request, the request is "Simple" because the FDA can simply resend the documents it has already found, reviewed, and redacted.

believed that CareToLive's request sought documents not readily available and would require searching and possibly redacting. On December 4, the Division of Information Disclosure left a telephone message with CareToLive's counsel stating that it follows a first-in/first-out, two track policy to respond to Freedom of Information Act requests and it would process CareToLive's request accordingly. The Division of Information Disclosure left the same message again on December 31.

Not content to wait, CareToLive filed a lawsuit in the Southern District of Ohio on January 2, 2008 seeking immediate production of all documents responsive to its request. On May 22, the district court granted the FDA's motion to stay proceedings and ordered the Center for Drug Evaluation to provide responsive documents no later than May 18, 2009. On May 18, the Division of Information Disclosure delivered one additional responsive document. The FDA also filed a motion for summary judgment the same day, based on its compliance with CareToLive's request for documents.

CareToLive subsequently filed a motion for discovery, which was also titled as a partial memorandum in opposition to the FDA's summary judgment motion. After briefing concluded, the district court granted the FDA's motion for summary judgment and denied CareToLive's motion for discovery.

## II.

We review de novo a district court's grant of summary judgment in a Freedom of Information Act proceeding. *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 543 (6th Cir. 2001). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* "The moving party has the initial burden of proving that no genuine issue of material fact exists," and we must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). A mere scintilla of evidence is insufficient to create a material question of fact and defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**A.        The Act's Requirements to Search for Responsive Documents.**

The Freedom of Information Act generally requires federal agencies to promptly make records available after receiving a request that reasonably describes the records and is made in accordance with the agency's published rules governing such requests. 5 U.S.C. § 552(a)(3)(A) (2006); *Rugiero*, 257 F.3d at 543. The agency may only withhold or limit the availability of records that fall within one of the Act's specific exceptions. 5 U.S.C. § 552(d); *Rugiero*, 257 F.3d at 543. These exceptions are to be narrowly construed, *Rugiero*, 257 F.3d at 543 (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001)), and do not apply in this case. The Act reflects "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976).

An agency responding to a request under the Act must make a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information. *Rugiero*, 257 F.3d at 547 (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998)). "At all times the burden is on the agency to establish the adequacy of the search." *Id.* "'The factual question . . . is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.'" *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

To meet this burden, "the agency may rely on affidavits or declarations providing reasonable detail of the scope of the search. In the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the [Act]." *Id.* (internal quotations and citations omitted); *see also Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980) (agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures

utilized" are insufficient to support summary judgment). This inquiry focuses not on whether additional documents exist that might satisfy the request, but on the reasonableness of the agency's search. *Id.* District courts typically dispose of Freedom of Information Act cases on summary judgment based on affidavits from the agency describing the search procedures that it followed before allowing the plaintiff to conduct discovery. *Id.* at 544.

CareToLive challenges the entirety of the FDA's response but places the most emphasis on the Center for Drug Evaluation's search, which was processed through its "Complex Track," took over two years to perform, and only located one additional responsive document. However, the detailed affidavits that the FDA submitted to the district court establish the adequacy of its search. These affidavits describe the procedures the FDA used to process CareToLive's request and to ensure that it appropriately responded to the request. They describe how the FDA determined which offices and departments to search for responsive documents and identify the specific offices, departments, and places searched. In *Rugiero*, we remarked that affidavits describing similar searches "appear[ed] to be the model of responsiveness under the [Freedom of Information Act]." *Rugiero*, 257 F.3d at 547. As in *Rugiero*, here, the uncontraverted assertions in the FDA's affidavits establish that the FDA satisfied the requirements in the Act to conduct a reasonable search for responsive documents.

Considering the evidence in a light most favorable to CareToLive, as we must, there is no genuine issue of material fact as to the adequacy of the FDA's search. Although the burden is on the FDA to establish that it conducted the search in good faith using methods to reasonably identify and produce the requested documents, *id.*, here, CareToLive has not come forth with any evidence to rebut the FDA's showing, *cf. Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (holding that requestor's assertion that an adequate search would have yielded more documents is mere speculation insufficient to rebut affidavits describing search process agency performed). Although agencies must respond to requests under the Act, they are not required to open their doors and invite the public in to peruse their records. For that

reason, our review focuses on the adequacy of the agency's search, and not on the chance that additional documents exist. Although we are mindful that CareToLive is necessarily at a disadvantage because it does not have access to the documents it claims were not produced, that does not absolve CareToLive of its responsibility to demonstrate that there is a material question of fact as to the adequacy of the FDA's search. CareToLive does not identify any additional offices or departments where the FDA should have searched for documents. All that CareToLive offers are conclusory allegations that "there must be additional documents" because of Dr. Pazdur's role and that the search was not actually conducted as described. However, conclusory allegations that the FDA did not conduct a detailed search are insufficient to create a material question of fact precluding summary judgment. The Act does not require that agencies account for all of their documents, so long as they reasonably attempt to locate them. To defeat a motion for summary judgment the requestor must identify specific deficiencies in the agency's response, which CareToLive has failed to do.

The closest CareToLive comes to creating a material question of fact is with the search conducted at the FDA's Center for Drug Evaluation. CareToLive asserts that the search was inadequate because it took nearly two years to complete yet only turned up one document. Additionally, CareToLive points out that the FDA only billed it forty cents for reproduction charges, and nothing for the cost of this search. While the low billing is unexpected and unusual, it does not create a material question of fact regarding the adequacy of the FDA's search in light of the detailed affidavits it submitted.

As the Sanger Declaration, which describes the procedures the Center for Drug Evaluation followed to conduct the search, explains, CareToLive's inquiry was placed on the "Complex Track" because it involved searching and redaction. Although CareToLive argues that this was a narrowly tailored, simple inquiry, it has not offered anything to establish that the requested documents had previously been provided to another requestor or that gathering these documents would not require searching or redaction. Therefore, it appears that the Center for Drug Evaluation properly placed the

request in its "Complex Track" even if, in common parlance, CareToLive made a simple request.

The Sanger Declaration sufficiently describes the steps that the Center for Drug Evaluation undertook to respond to CareToLive's request and explains that the search only took a little over one month to complete. The two year delay was due to a backlog from other requests that the Center for Drug Evaluation had received before CareToLive's. If a search really took an agency two full years to complete and only turned up one responsive document, perhaps that would suggest that the search was not done in good faith in a manner intended to locate responsive documents and summary judgment would not be appropriate. However, this search did not take two years. It took less than one month after the Center for Drug Evaluation began processing it. Additionally, although CareToLive argues that the search only turned up one document, the record suggests that the search uncovered numerous documents. Several people had been copied on the correspondence CareToLive requested, and only one of these documents had not already been given to CareToLive from one of the FDA's other departments. Therefore, we cannot infer from the delay or failure to find additional responsive documents that the search was not reasonably designed to uncover responsive documents.

The Center for Drug Evaluation's bill for only forty cents in reproduction charges is unexpected but does not suggest that the search procedures described in the Sanger declaration were not followed. In contrast to this invoice, the Center for Biologics billed CareToLive $100.45 for 2.75 hours of search time. The Office of the Executive Secretary billed CareToLive $404.75. Although the Center for Drug Evaluation's failure to charge for the search, standing alone, might be some evidence that it did not conduct a detailed search, this single irregularity does not overcome the detailed averments set forth in the Sanger Declaration. That declaration explains that the Center for Drug Evaluation fulfilled its duties under the Act and conducted a reasonable search for responsive documents.

## B.     Recovering Deleted Files.

CareToLive also argues that in order to comply with the Act the FDA must use an information technology expert and attempt to recover electronic documents that have been deleted. Although Dr. Pazdur explained in his affidavit that he shredded the physical copies of responsive memos within one month of receiving them and also deleted any electronic copies, CareToLive asserts that an information technology specialist would be able to retrieve electronic copies from Dr. Pazdur's computer. CareToLive also argues that, as a federal agency, the FDA maintains a network with backup copies of Dr. Pazdur's e-mails even if he deleted them from his local machine. Although both of these assertions may be true, there is no factual evidence in the record supporting them and, therefore, CareToLive did not meet its burden of coming forth with evidence to rebut the FDA's showing. Additionally, performing an invasive search for deleted electronic documents is unnecessary in this case because the FDA maintains that other individuals were copied on these letters and it has, from these other sources, already delivered copies of these documents to CareToLive in response to its inquiry. Any documents it might be able to recover from Dr. Pazdur's computer or its servers would merely be cumulative of items already in CareToLive's possession. In light of CareToLive's request and the FDA's response, the FDA need not attempt to recover these deleted files to meet its burden of conducting a reasonable search.

Although some of our sister circuits have required that agencies attempt to recover electronic files to respond to certain requests, CareToLive's request and the facts of this case do not require such a search. In *Baker & Hostetler,* for example, the D.C. Circuit implied that an agency may be required to attempt to retrieve electronic communications, but held that the agency's response to the request under the Freedom of Information Act was sufficient because it included affidavits explaining why it was unable to recover the deleted e-mails, and the requestor did not rebut that explanation. 473 F.3d at 318; *accord Fox News Network, LLC v. Bd. of Governors of The Fed. Reserve Sys.*, 639 F. Supp. 2d 384, 397 (S.D.N.Y. 2009), *vacated on other grounds*, 601 F.3d 158 (2d Cir. 2010) (holding that the agency's "failure to use computer experts to

search for these [deleted] files does not render the search inadequate"). In this case, Dr. Pazdur deleted electronic copies of messages that are responsive to CareToLive's request. But, as noted above, the record does not contain any factual evidence to suggest that the FDA can retrieve these documents. Additionally, there are no factual allegations in the record to suggest that even if these deleted documents were recovered, they would be items the FDA had not already provided to CareToLive. Even if we assume that it is possible to recover the electronic files Dr. Pazdur deleted, the FDA's failure to do so in this case does not render its search unreasonable.

Independently bringing in an information technology expert to attempt to retrieve these files is particularly unnecessary because CareToLive did not specifically request deleted documents—or any documents—from Dr. Pazdur's computer. If the request had more specifically addressed documents on Dr. Pazdur's computer, and there were no other copies of these documents available then, perhaps, the FDA might be required to retrieve the items or provide affidavits explaining why retrieval is impossible. However, an agency's search must only be reasonable under the circumstances, and when the data retrieved would only be cumulative of items already produced, attempting to perform this type of data retrieval is unnecessary. *See Grand Cent. P'ship*, 166 F.3d at 489 (noting that "an agency's search need not be perfect, but rather need only be reasonable"); *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 663 (D.C. Cir. 2003) (holding that the "adequacy of an agency's search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case").

Government employees delete e-mails and electronic documents every day and, as evidenced by the facts of this case, government agencies are already burdened with a backlog of Freedom of Information Act requests. Adopting CareToLive's position could potentially cripple agencies by requiring that after following their normal search procedures, they must have an information technology expert scan relevant computers and servers for additional information that might have been deleted. This is manifestly not what the Act intends and we decline to require it in this case. *See Wilbur v. CIA,* 355 F.3d 675, 678 (D.C. Cir. 2004) (noting that "the fact that responsive documents once

existed does not mean that they remain in the [agency's] custody today or that the [agency] had a duty under [the Freedom of Information Act] to retain the records"); *Yeager v. DEA,* 678 F.2d 315, 321 (D.C. Cir. 1982) ("A requester is entitled only to records that an agency has in fact chosen to create and retain."). When faced with a request such as this, an agency need not attempt to recover electronic data that has been deleted in order to meet its requirement of performing a reasonable search.

### III.

In response to the FDA's motion for summary judgment, CareToLive filed a "partial" response to the motion and a motion for discovery under Federal Rule of Civil Procedure 56(f). Recent amendments to the rules moved the provisions formerly found in subdivision (f) to subdivision (d). Fed. R. Civ. P. 56 advisory committee's note (2010). However, the recent amendments did not modify the substance of the rule and the district court properly denied discovery because CareToLive failed to file a proper affidavit in support of its motion for discovery. Alternatively, because of the unique context of a dispute under the Freedom of Information Act, CareToLive has not put forth any factual allegations showing the FDA's bad faith or failure to conduct a reasonable investigation. Therefore, the district court was within its discretion to deny discovery for this reason.

We review a district court's discovery orders in an action under the Freedom of Information Act for abuse of discretion. *E.g., Popovich v. Sony Music Entm't, Inc.*, 508 F.3d 348, 360 (6th Cir. 2007); *see also, e.g.*, *Trentadue v. FBI*, 572 F.3d 794, 806 (10th Cir. 2009) (reviewing district court's discovery order in a case under the Freedom of Information Act for abuse of discretion); *Wood v. FBI*, 432 F.3d 78, 82 (2d Cir. 2005) (same). "'An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, . . . improperly applies the law, . . . or . . . employs an erroneous legal standard.'" *Popovich*, 572 F.3d at 806 (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 (6th Cir. 2007)).

CareToLive did not file a proper affidavit and therefore failed to comply with the requirements in Rule 56(d) for obtaining discovery. Under this Rule, a party may

oppose a motion for summary judgment by submitting an affidavit explaining why it cannot present facts essential to justify its opposition. Fed. R. Civ. P. 56(d). The document CareToLive submitted as its affidavit was only one paragraph that stated:

### AFFIDAVIT BY COUNSEL FOR CARETOLIVE

> Now comes Counsel for CareToLive under Federal Rule of Civil Procedure 56(f) and swears under oath and asserts to this Court that CareToLive is unable by affidavit to provide proof to this Court of the existence of the requested FOIA correspondence on the computer of FDA employee Richard Pazdur at this time without the relief and/or discovery requested herein. With any or all of the relief requested in the Rule 56(f) motion the Plaintiff is confident it can show that the FDA FOIA response was not complete. Sworn to by me this 6th day of June 2009.
>
> s/Kerry M. Donahue

This one paragraph statement by CareToLive's attorney woefully fails to meet the requirements of an affidavit. The statement was not sworn to before a notary public nor signed under penalty of perjury pursuant to 28 U.S.C. § 1746. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002). Additionally, the statement does not set forth any factual basis for the relief CareToLive is seeking. *Cf. Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 813 (2d Cir. 1994) (holding that bare allegations in an affidavit that the agency withheld documents are insufficient without factual support). Rule 56(d) recognizes that there are instances when a party lacks the necessary facts to properly contest a summary judgment motion. However, the party must at least specify what information it is missing. CareToLive's affidavit is an attempt to countermand this simple requirement. Although CareToLive may be confident that with additional information it can show that the FDA's response was incomplete, nothing in this affidavit instills the same confidence in us. Without CareToLive having filed a proper affidavit, the district court did not abuse its discretion by denying discovery.

Alternatively, even if CareToLive had submitted a proper affidavit, the district court still would not have abused its discretion by denying discovery. Claims under the Freedom of Information Act are typically resolved without discovery on the basis of the agency's affidavits. *See Rugiero*, 257 F.3d at 544; *Carney*, 19 F.3d at 812 (explaining

that "discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face"). If the agency satisfies its burden of establishing that it conducted a reasonable search, the requestor must make a "showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations," or provide some other evidence why summary judgment is inappropriate. *Carney*, 19 F.3d at 812. A requestor is not entitled to discovery based on its hope that it might find additional documents or its belief that the agency is withholding information. *See Steinberg*, 23 F.3d at 552 (remarking that "speculation that the information requested must exist also does not establish that the search was unreasonable").

The district court did not abuse its discretion when it concluded that CareToLive failed to establish bad faith on the part of the FDA, and denied its motion for discovery. CareToLive appears to allege that the FDA acted in bad faith when it (1) placed CareToLive's request on the "Complex Track;" (2) failed to conduct a proper search; and (3) failed to preserve documents or attempt to recover electronic copies that have been deleted. However, none of these actions show that the FDA acted in bad faith.

The uncontroverted evidence establishes that the Center for Drug Evaluation placed CareToLive's inquiry on the "Complex Track" in accordance with its two track system. CareToLive is correct that its request was not particularly complex, but, while the term "Complex Track" may be an inaccurate name, CareToLive's request appears to fall on what the FDA has defined as the "Complex Track."[3] Therefore, it was not bad faith to classify it as such.

Similarly, allegations that the FDA failed to conduct a comprehensive enough search, even if true, cannot be bad faith. Had the FDA not performed a thorough search, then it would not have been entitled to summary judgment. However, a requestor cannot

---

[3]Additionally, to the extent that CareToLive argues that it was bad faith to take nearly two years to respond to its request, there is no evidence to support the conclusion that this was done by the FDA as a deliberate attempt to delay or frustrate the process. The evidence suggests that the FDA's Division of Freedom of Information was perhaps understaffed, but not that it was acting in bad faith or processed CareToLive's request after it should have.

rely on allegations that the search was not reasonably comprehensive as a backdoor to obtain discovery. Conclusory allegations that other undisclosed records must exist somewhere and that the agency is deliberately concealing records do not rise to the level of bad faith. Holding otherwise would, as discussed above, undermine other decisions recognizing that assertions that the agency failed to produce documents are insufficient to preclude summary judgment. *See Baker & Hostetler*, 473 F.3d at 318; *Rugiero*, 257 F.3d at 547-48.

Finally, claims that the FDA, and specifically Dr. Pazdur, intentionally destroyed documents to avoid complying with CareToLive's request are not supported by the record. Dr. Pazdur's affidavit states that he destroyed the relevant documents within one month of receiving them, in accordance with his regular practice. CareToLive requested documents that were sent between March 29, 2007 and April 30, 2007. However, it did not file its Freedom of Information Act request until August 15, 2007. Accepting Dr. Pazdur's uncontroverted declaration that he destroyed his copies of these documents within one month of receiving them, there is simply no evidence that the documents were destroyed in an attempt to keep them from CareToLive when CareToLive did not file its request until more than two and a half months after Dr. Pazdur claims to have destroyed them.

Accordingly, the district court properly denied CareToLive leave to conduct discovery.

**IV.**

The FDA's affidavits establish that it conducted a reasonable search to locate responsive documents and CareToLive failed to introduce evidence creating a material question of fact as to the adequacy of the search. Therefore, the district court properly granted summary judgment in favor of the FDA. Similarly, the district court did not abuse its discretion when it denied CareToLive discovery. Therefore, the decision of the district court is **AFFIRMED**.