NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0810n.06

Case No. 14-5192

FILED
Oct 24, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOE ALLEN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| CITY OF JACKSON, TENNESSEE; | ) | TENNESSEE |
| JACKSON-MADISON COUNTY | ) | |
| GENERAL HOSPITAL DISTRICT; JERRY | ) | |
| GIST, | ) | |
| | ) | |
| Defendants-Appellees. | | |

BEFORE: BOGGS and COOK, Circuit Judges; QUIST, District Judge[*]

COOK, Circuit Judge. Plaintiff Joe Allen, an officer discharged from the Jackson, Tennessee police department for violating the city's drug-free workplace policy, appeals the district court's grant of summary judgment to the City and its Mayor on his due-process, defamation, and contract claims. Allen challenges both the timing of the summary-judgment motion and the merits of the court's adverse judgment. We affirm.

Beginning with the procedural issue, Allen renews his objection to defendants' pre-discovery summary-judgment motion. The district court overruled this objection and proceeded

_____

[*]The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

to the merits, citing Allen's failure to file an affidavit detailing his need for discovery. *See* Fed. R. Civ. P. 56(d). On appeal, Allen argues that the court overlooked his "declaration that [he] did not have facts because discovery had yet to be performed." (Appellant Br. at 21.) We review this sort of ripeness challenge to a summary-judgment decision for abuse of discretion, *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002), recognizing that "a party may file a motion for summary judgment at any time until 30 days after the close of . . . discovery" unless the district court provides otherwise, Fed. R. Civ. P. 56(b). The objecting non-movant bears the burden of identifying needed discovery. *Abercrombie & Fitch Stores, Inc.*, 280 F.3d at 627.

Here, the district court properly exercised its discretion in concluding that Allen failed to document his need for discovery. Not only did his briefing in that court lack the requisite affidavit or sworn declaration, Fed. R. Civ. P. 56(d), but it made no attempt to identify the relevant and necessary evidence he would seek in discovery. That alone precludes our finding an abuse of discretion. Although Allen's appellate briefing at least tries to articulate his need for discovery, the effort produces only the vague assertion that "the discoverable facts are [his] drug screening results, the City of Jackson's designated level cut-off for a positive drug test[,] and the level drug level [sic] in [his] screening," and speculation that "discovery would allow [him] to present evidence" that the Mayor maliciously reported his drug-test-related discharge to the press. (Appellant Br. at 22–23, 35.[1]) The record and Allen's admissions show otherwise.

First, Allen *did* have both the City's Zero Tolerance Policy and his two positive drug-test results. (*See generally* R. 4-1, Policy; R. 9-3, Test Results (detecting marijuana metabolites).)

---

[1]Allen's district-court brief similarly suggested that discovery might yield evidence of the Mayor's malice, but fails to elaborate on what that might be. (R. 17-1, Pl.'s Resp. Br. at 14.)

Second, Allen admits that the City's policy sets no drug-level cutoff for positive test results. (R. 4, Am. Compl. ¶ 16 ("The Policy did not detail what level constituted a failed drug screening level."); R. 17-1, Pl.'s Resp. Br. at 3 (same); Appellant Br. at 30 (same).) Instead, the policy prohibits employees from "[b]eing under the influence of drugs," defined as "a state of having levels where screening test results are reported as being positive." (R. 4-1, Policy at 1.) That policy standard, combined with the undisputed positive drug tests addressed below, undermines Allen's claim that discovery would unveil malice—let alone a false statement—from the Mayor's reporting his firing to the media. Finally, we note that Allen forfeited the opportunity to dispute the City's statement of undisputed material facts by failing to respond to it, as required by the district court's local rules. *See* W.D. Tenn. L.R. 56.1(a) and (d); *Scipio v. Sony Music Entm't, Inc.*, 173 F. App'x 385, 387 n.1 (6th Cir. 2006). Under the circumstances, the district court properly denied Allen's unspecified request for discovery. *Cf. CareToLive v. FDA*, 631 F.3d 336, 344–45 (6th Cir. 2011) (affirming denial of discovery and grant of summary judgment where the party's Rule 56(d) affidavit "d[id] not set forth any factual basis" supporting its request for additional discovery).

Turning to the summary-judgment merits—legal issues that we review de novo, *see Bondex Int'l Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 676 (6th Cir. 2011)—Allen's due-process and contract arguments boil down to a claim that the City's Zero Tolerance Policy changed his at-will employment status, entitling him to a fair drug-testing process.[2] This position recognizes that at-will employees, whom employers can fire for any reason or no reason

---

[2]The district court construed Allen's due-process claim to encompass the reputational injury suffered from his public discharge and the denial of a name-clearing hearing. Allen concedes that he declined the City's offer of a name-clearing hearing and abandons this aspect of his due-process claim. (Appellant Br. at 34.)

at all, lack the sort of "property interests" in continued employment necessary for due process to apply. *See, e.g., Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir. 1994). Yet, as the district court explained, Allen identifies no policy language changing his at-will status or obliging the City to adhere to specific termination procedures following a positive drug test. Allen emphasizes the "Test Results" provision, which states (1) that positive-testing employees "may be subjected to a second test" of the original urine sample and may request a third test at their own expense, and (2) that "[c]onfirmed positive test results . . . will result in immediate termination of employment with the City." (R. 4-1, Policy at 3–4.) But this language changes nothing about City employees' at-will status; rather, it alerts employees to the availability of retests and warns of the penalties for failing them.

Moreover, Allen shows neither a violation of the City's policy nor an unfair drug-testing process. The undisputed record shows that he twice tested positive for marijuana, and the City fired him. Allen denies the positive test results, apparently challenging their "POS" readings as ambiguous. But the test results clearly differentiate "NEG" (negative) from "POS" (positive) readings, as demonstrated by the drug-metabolite measurements (carboxy THC) that accompany Allen's "POS" results for cannabinoids (marijuana).

Nevertheless, Allen disputes the significance of his positive results, noting that his carboxy THC measurements—18 ng/ml and 16 ng/ml—fall below the initial test's listed "analytical cut-off concentration" of 50 ng/ml. (*See* R. 9-3, Test Results at 1.)[3] This discrepancy, he claims, reveals that he *should* have received a negative test result and demonstrates that the City must have instructed the lab to test for lower concentration levels.

_____

[3]Notably, Allen does not dispute that his retest carboxy THC amount exceeded that test's 15 ng/ml threshold.

Yet, Allen offers no evidence of the lab rejecting his test results as false positives or the City influencing his test results, and his conjecture will not suffice. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Appellant's repeated invocation of a purported industry standard for drug-test cut-off levels similarly suffers from lack of evidence. And even if the lab's drug-testing protocol departed from industry standards, the results returned to the City reported that Allen tested positive ("POS") for marijuana metabolites. The City's Zero Tolerance Policy—as its name suggests—requires nothing more. (*See* R. 4-1, Policy at 1 (prohibiting employees from "[b]eing under the influence of drugs," defined as "a state of having levels where screening *test results are reported as being positive*" (emphasis added)).)

Because Allen fails to substantiate his due-process, defamation, and contract claims, and because he demonstrates no abuse in the district court's denial of additional discovery, we AFFIRM the district court's judgment.