**Jacqueline KOHAKE, Plaintiff–Appellant,**

v.

**DEPARTMENT OF TREASURY, Defendant–Appellee.**

No. 15–3068.

United States Court of Appeals, Sixth Circuit.

Nov. 17, 2015.

584

BEFORE: GIBBONS and
McKEAGUE, Circuit Judges;
ANDERSON, District Judge.*

S. THOMAS ANDERSON, District
Judge.

Jacqueline Kohake sought the production of records regarding the Estate of William Rueben Meadors from the Department of the Treasury through the Internal Revenue Service ("IRS") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. After certain records were produced by the IRS, Kohake filed a complaint in the district court challenging the adequacy of the search and the withholding of two pages of documents under a FOIA exemption.[1] The district court granted the motion for summary judgment of the IRS, and Kohake has appealed that decision. The only issue before this Court is whether the district court correctly determined that the search that the IRS conducted for records in response to Kohake's FOIA request was reasonable. For the reasons discussed below, we **AFFIRM** the judgment of the district court.

## I.

Kohake claims to be an heir and next of kin of William Rueben Meadors. She contends that she is entitled to a portion of his estate that is purportedly derived from vast real estate and oil holdings. Mellon Bank in Pittsburgh allegedly holds the for-

---

* The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

1. On appeal, Kohake does not challenge the withholding of the two pages.

tune of the Meadors family in trust but has refused to distribute it. Kohake believes that the IRS has been receiving tax revenues and/or tax returns regarding the Meadors Estate ("the Estate"). In an attempt to prove the existence of the Estate, Kohake submitted a FOIA request to the IRS for "[a]ll estate tax returns and return information and any documents or material relating to the Estate of William Ruben Meadors aka Meadows aka Medders aka Meaders aka Meder, etc. and for Racheal Clairanda Meadors King." [2]

Kohake's FOIA request was assigned to IRS Senior Disclosure Specialist Kathy Peirce. Peirce searched for responsive documents with the Integrated Data Retrieval System ("IDRS"), using the taxpayer names and the Taxpayer Identification Number ("TIN") that Kohake provided.[3] These searches revealed that there were two categories of documents associated with the Estate: a tax return and an examination file. Peirce determined that the documents needed to be retrieved using Accession Numbers ("ANs").[4] Peirce contacted several IRS offices to determine what ANs were associated with the documents, but her efforts were unsuccessful.

Subsequently, Kohake informed Peirce of other FOIA requests regarding Meadors Estate records. Kohake provided an August 2009 letter that was responsive to a FOIA request made by a person named James Clark and a copy of a May 2011 letter from the Deputy Chief Counsel of the Treasury that indicated there was a Meadors Estate file that had been partially released. Kohake also claimed that there was information about the Estate in the Jefferson County Courthouse in Texas and in various IRS field offices in Texas.

In January 2013, Julie Schmitz, Senior Disclosure Specialist and Acting Manager with the IRS, was informed that Kohake had alleged that the IRS had not timely responded to her FOIA request. In response, Schmitz conducted her own IDRS search using Integrated Automation Technologies tools and several pieces of taxpayer information, such as name and taxpayer identification numbers, which she believed produced better results than conducting a traditional IDRS search.

All FOIA requests received by the IRS are stored in the Automated Freedom of Information Act ("AFOIA") application, a system that the IRS uses to track and process requests for agency records. When processing a FOIA request, Schmitz routinely conducted searches of AFOIA to see whether there were related requests, although she was not required to do so.

Schmitz searched AFOIA in connection with Kohake's request, looking for both open and closed cases, and using various search terms, including the Estate's TIN and variations of Meadors' name. The only relevant FOIA request that Schmitz found in AFOIA was Kohake's request. Likewise, she did not find any scanned documents responsive to Kohake's request.

According to Schmitz, FOIA requests are retained for two years after the agency's initial determination if the requestor does not appeal, for six years after a final agency determination, or for three years after final adjudication by the courts, whichever is later. Once a FOIA request is deleted, it is impossible for any IRS employee to search for that request.

---

2. The record contains variations of the spelling of Meadors' name.

3. IDRS is the IRS's primary resource for researching taxpayer account information.

4. An AN is a number written on a box of documents that indicates where the box is located.

Searches of the IDRS using the taxpayer's TIN locate information about Notices of Federal Tax Liens ("NFTLs") filed against the taxpayer. NFTL records are destroyed one year after the tax account is satisfied or the statutory period for collection has expired. Schmitz's search did not reveal any information about NFTLs connected with the Estate.

Similar to Peirce's search, the search by Schmitz showed a tax return and an examination file associated with the Estate. Using the ANs, Schmitz requested the documents from the National Archives and Records Administration Center ("Records Center"). The Records Center forwarded 774 pages of documents. There were 374 pages associated with the tax return and 400 pages associated with the examination file. All the documents related to activity during 1991 and 1992 even though Schmitz's IDRS search did not include any date restrictions.

The IRS released 772 pages to Kohake in May 2013. Two documents had partial redactions, and 770 were released in full. The IRS withheld two pages to protect the identity of a confidential source.

Prior to the release of the documents, Kohake filed a complaint in the United States District Court for the Southern District of Ohio. The IRS filed an answer to the complaint and then moved for summary judgment on the ground that it had conducted a reasonable search.

Kohake filed a response in opposition to the motion, contending that there was a genuine issue of material fact as to whether the IRS had conducted a reasonable search. Kohake argued that the IRS had not furnished documents related to a previous FOIA request submitted by a person named Ann Helmon in 1998 and that had been the subject of a court decision in 2000. That decision indicated that responsive documents were in the possession of the U.S. Attorney's Office in Texas.

Additionally, because IRS attorney Stephanie Sasarak stated in her declaration that in 1991 the Estate had been inactive for many years, Kohake questioned why the IRS did not produce documents regarding pre–1991 activity. Finally, Kohake argued that, based on the letter sent in 1981 to James Clark from the Federal Information Center, responsive information might be found at the Jefferson County Courthouse in Texas with regard to a tax lien.

In reply, the IRS maintained that it was not required to search for files held by another agency. And, although it was not required to search for documents related to another person's FOIA request, Schmitz, in fact, had done so. Moreover, Schmitz's search had encompassed pre–1991 information.

The district court granted the IRS's motion for summary judgment. The court determined that the IRS had conducted a search in good faith using methods to reasonably identify and produce the requested documents. After noting that in a FOIA lawsuit an "indispensable prerequisite to liability" is the agency's possession of the requested documents, the district court held that a reasonable search did not require the IRS to search the files of either the U.S. Attorney's Office or the Jefferson County Courthouse in Texas. Additionally, the court concluded that Helmon's FOIA request would have been deleted by the IRS from its records systems because it had been made in 1998, and the court decision in the Helmon litigation was rendered in 2000. The IRS deleted the records in 2003, three years after the Helmon court decision. The court further determined that the IRS's search was conducted without a date limitation and, thus, was designed to locate pre–1991 information.

Because there was no disputed issue of material fact as to whether the IRS's search was reasonable, the district court granted the motion for summary judgment of the IRS. Kohake's timely appeal followed.

## II.

In a FOIA action, "[t]o prevail on summary judgment, the government must show that it made a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information and that any withholding of materials was authorized within a statutory exemption." *See Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir.2012) (internal citation and quotation marks omitted). "The propriety of a district court's grant of summary judgment in a FOIA proceeding is ... reviewed de novo on appeal." *Abraham & Rose, P.L.C. v. United States*, 138 F.3d 1075, 1078 (6th Cir.1998).

On appeal, Kohake contends that the IRS failed to search for documents in the possession of other agencies; did not provide documents related to FOIA requests made by other individuals; failed to search for pre–1991 information; and did not conduct a search regarding tax liens. Kohake argues that these deficiencies in the search rendered it unreasonable.

The IRS counters that it conducted a search in good faith using reasonable methods to identify and produce the requested documents. Specifically, the IRS asserts that it was not required to search for documents at other agencies; the parameters of Kohake's request did not include FOIA requests made by other individuals; the search did not have any date restrictions; and the search was designed to locate tax liens.

Under the FOIA, federal agencies must respond promptly to requests for records that contain a reasonable description of those records and that are made in accordance with published rules and procedures. 5 U.S.C. § 552(a)(3)(A). At all times the burden is on the agency to establish the adequacy of its search. *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 547 (6th Cir.2001) (citation omitted). The agency must show that it made a "good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information" and that any withholding of materials was authorized within a statutory exemption. *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir.2011); *see also Rugiero*, 257 F.3d at 547 ("The FOIA requires a reasonable search tailored to the nature of the request.") (citation omitted). "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C.Cir.1986).

The IRS may rely on sworn documents that provide reasonable details concerning the scope of its search. *CareToLive*, 631 F.3d at 340–41. "In the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Rugiero*, 257 F.3d at 547 (alteration in original) (internal quotation marks and citation omitted).

In the present case, the declarations of Peirce and Schmitz show that the agency's search was reasonable. The search conducted by Peirce was unsuccessful because she could not find the documents associated with the ANs. The IRS then assigned Schmitz to conduct a second search. Schmitz's search confirmed the search results obtained by Peirce, and Schmitz was eventually able to obtain the documents.

Ultimately, the IRS identified 774 pages of responsive documents.

Kohake contends that "circumstances" raise a genuine issue of material fact as to whether the search by the IRS was reasonable. She points to FOIA requests for Meadors Estate information made by others and claims that she should have been provided with documents that the IRS found in response to those FOIA requests. However, Schmitz did search AFOIA in connection with Kohake's request, looking for both open and closed FOIA cases and using various search terms. The only FOIA request Schmitz found in AFOIA was Kohake's request, presumably because the IRS does not retain FOIA requests indefinitely.

Kohake contends that those documents that the IRS admitted having when responding to Ann Helmon's FOIA request should have been produced to her. Helmon's FOIA request was finally adjudicated in November 2000. *See Helmon v. I.R.S.*, No. 3:00cv00809, 2000 WL 1909786 (N.D.Tex. Nov. 6, 2000), *recommendation adopted*, 2000 WL 33157844 (N.D.Tex. Nov. 30, 2000). The request would have been purged from the IRS's files years before Kohake submitted her FOIA request in July 2012, as the district court correctly found. Therefore, there was no FOIA request to give to Kohake.

Kohake also points to the FOIA request submitted by James Clark. A letter from the Federal Information Center, an arm of the General Services Administration, was sent in 1981 stating that there was a "possibility" of a lien against the Estate for federal income taxes. This information is purportedly located at the Jefferson County Courthouse in Texas. The FOIA does not obligate the IRS to search for documents not in its possession. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 155, 100 S.Ct. 960, 63

L.Ed.2d 267 (1980) (explaining that agency possession of the requested documents is "an indispensable prerequisite to liability in a suit under the FOIA"). Here, the IRS provided evidence that it had conducted a good faith search and that it did not possess the requested documents, thus, Kohake's argument is without merit.

Schmitz's search would have located information of current federal tax liens. However, the IRS does not retain information about tax lien notices indefinitely. Those records are destroyed one year after the tax account is satisfied or the statutory period for collection has expired. Thus, any tax lien referenced in the 1981 letter was no longer in the IRS's files.

FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Kissinger*, 445 U.S. at 152, 100 S.Ct. 960; *see also Wilbur v. C.I.A.*, 355 F.3d 675, 678 (D.C.Cir.2004) (per curiam) ("A requester is entitled only to records that an agency has in fact chosen to create and retain.") (internal quotation marks and citation omitted); *Jones v. F.B.I.*, 41 F.3d 238, 249 (6th Cir.1994) ("[W]e cannot order the FBI to make amends for any documents destroyed prior to the request because a FOIA request pertains only to material in the possession of the agency at the time of the request."). Accordingly, the fact that the IRS may have destroyed certain records pursuant to its policy does not render the search at issue unreasonable.

Finally, Kohake argues that because no information was produced for the years prior to 1991, the search was not reasonable. IRS attorney Sasarak determined that the Meadors account had been inactive for many years as of 1991, and the only documents related to the Estate that she reviewed were the 774 pages that were produced. The mere fact that documents

relevant to earlier years were not located does not mean that the IRS's search was not a reasonable one. Destroying records pursuant to a records retention policy, as discussed above, does not violate the FOIA.

In the present case, the evidence provides reasonable detail of the scope of the search and demonstrates that the IRS made a good faith effort to locate the requested documents and employed methods reasonably expected to produce the requested information. The uncontroverted statements in the IRS's affidavits show that the agency satisfied the requirements in the FOIA to conduct a reasonable search for responsive documents. Considering the evidence in the light most favorable to Kohake, the district court correctly determined that there was no genuine issue of material fact as to the adequacy of the search. Although the burden is on the IRS to establish that it conducted the search in good faith using methods to reasonably identify and produce the requested documents, Kohake has failed to submit any non-speculative evidence challenging the adequacy or sufficiency of the IRS's search efforts. Thus, the district court correctly found that the IRS was entitled to summary judgment. *See Baker & Hostetler LLP v. U.S. Dep't of Commerce,* 473 F.3d 312, 318 (D.C.Cir.2006) (concluding that a requestor's assertion that an adequate search would have yielded more documents is mere speculation insufficient to rebut affidavits describing search process agency performed).

### III.

For the above reasons, we affirm the decision of the district court.